No. 17-1045

# United States Court of Appeals for the Fourth Circuit

MARY WOOLFORD GIBBS,

*Plaintiff – Appellant,*

*v.*

DORCHESTER COUNTY BOARD OF EDUCATION,

*Defendant – Appellee.*

*On Appeal from the United States District Court for the District of Maryland at Baltimore Case No. 1:16-cv-00395-JMC (Hon. J. Mark Coulson, Judge)*

# BRIEF FOR APPELLEE

LISA Y. SETTLES
ADAM E. KONSTAS
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road
Suite 500
Towson, MD 21204-0000
lsettles@pklaw.com
akonstas@pklaw.com
(410) 339-5786

*Counsel for Appellee*

APRIL 24, 2017



UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __17-1045__     Caption: _Mary Woolford Gibbs v. Dorchester County Board of Education_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Dorchester County Board of Education_
(name of party/amicus)

_____

who is _____Appelle_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected
substantially by the outcome of the proceeding or whose claims the trade association is
pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date:    January 12, 2017

Counsel for: Appelle _____

## CERTIFICATE OF SERVICE
***************************

I certify that on    January 12, 2017    the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

Robin Cockey, Esquire
Cockey, Brennan & Maloney, P.C.
313 Lemmon Hill Lane
Salisbury, MD  21801

_____
(Signature)

12 January 2017
(date)

- 2 -

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ......................................... i

TABLE OF AUTHORITIES .................................................. iv

INTRODUCTION ...........................................................1

STATEMENT OF THE JURISDICTION..........................................1

STATEMENT OF THE ISSUES...............................................1

I.  STATEMENT OF THE CASE .............................................2

II.  STATEMENT OF THE FACTS ..........................................4

III. STANDARD OF REVIEW..............................................8

IV. SUMMARY OF THE ARGUMENT.........................................10

V.  ARGUMENT........................................................12

   A.  The District Court Properly Found that Ms. Gibbs Failed to Establish a
       Prima Facie Case of Race Discrimination....................................15

   B.  The District Court Properly Found that Ms. Gibbs Failed to Demonstrate
       Pretext on the Part of the Board....................................23

VI.  CONCLUSION.....................................................30

ORAL ARGUMENT REQUESTED..............................................30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Carolina Fire Control Inc.,*
  112 F. Supp. 3d 340 (M.D.N.C. 2015) ...................................................25

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)................................ 10, 22

*Anderson v. Westinghouse Savannah River Co.,*
  406 F.3d 248 (4th Cir. 2005) ........................................................ 26, 28

*Bostron v. Apfel,*
  104 F. Supp. 2d 548 (D. Md. 2000),
  aff'd, 2 F. App'x 235 (4th Cir. 2001) ..................................................29

*Brinkley v. Harbour Rec. Club,*
  180 F.3d 598 (4th Cir. 1999) ........................................................ 13, 14

*Celotex Corp. v. Catrett,*
  477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) .....................................9

*Cepada v. Bd. of Educ. of Baltimore Cnty.,*
  814 F. Supp. 2d 500 (D. Md. 2011).....................................................13

*Coleman v. Md. Court of Appeals,*
  626 F.3d 187 (4th Cir. 2010) ...........................................................13

*Dugan v. Albemarle County School Bd.,*
  293 F.3d 716 (4th Cir.2002) ...........................................................26

*Evans v. Techs. Applications & Serv. Co.,*
  80 F.3d 954 (4th Cir. 1996) ............................................................13

*Felty v. Graves-Humphreys Co.,*
  818 F.2d 1126 (4th Cir. 1987) .......................................................9, 22

*Hawkins v. Leggett,*
   955 F. Supp. 2d 474 (D. Md. 2013) ............................................................. 13, 29

*Hawkins v. PepsiCo, Inc.,*
   203 F.3d 274 (4th Cir. 2000) ..................................................................... 24, 25

*Haywood v. Locke,*
   387 F. App'x 355 (4th Cir. 2010) .......................................................................16

*Hunter v. Wake Cty. Bd. of Educ.,*
   No. 5:08-CV-62-D, 2010 WL 2164613 (E.D.N.C. May 25, 2010) ....................16

*James v. Booz–Allen & Hamilton, Inc.,*
   368 F.3d 371 (4th Cir. 2004) .............................................................................12

*Kess v. Mun. Employees Credit Union of Baltimore, Inc.,*
   319 F. Supp. 2d 637 (D. Md. 2004) (same) .......................................................26

*Laing v. Fed. Exp. Corp.,*
   703 F.3d 713 (4th Cir. 2013) .............................................................................28

*Lightner v. City of Wilmington,*
   545 F.3d 260 (4th Cir. 2008) .............................................................................16

*Love–Lane v. Martin,*
   355 F.3d 766 (4th Cir. 2004) .............................................................................13

*Mandengue v. ADT Sec. Sys., Inc.,*
   CIV.A. RDB-09-3103, 2010 WL 2365463 (D. Md. June 4, 2010) .....................12

*Mary's Honor Ctr. v. Hicks,*
   509 U.S. 502, 113 S. Ct. 2742, (1993) ..............................................................27

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,*
   475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ......................................10

*McDonnell Douglas Corp. v. Green,*
   411 U.S. 792 (1973) ..........................................................................................13

*Morgan v. City of Rockville,*
  No. GJH-13-1394, 2015 WL 996630 (D. Md. Mar. 4, 2015) ............................14

*Morrow v. Farrell,*
  187 F. Supp. 2d 548 (D. Md. 2002)
  aff'd, 50 F. App'x 179 (4th Cir. 2002) ..................................................................12

*Ousley v. McDonald,*
  648 F. App'x 346 (4th Cir. 2016)................................................... 14, 27

*Reeves v. Sanderson Plumbing Prod., Inc.,*
  530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) ..................................27

*Romeo v. APS Healthcare Bethesda, Inc.,*
  876 F.Supp.2d 577 (D. Md. 2012)........................................... 16, 18, 27

*Russell v. Microdyne Corp.,*
  65 F.3d 1229 (4th Cir. 1995) ...................................................... 14, 27

*Sawyers v. United Parcel Serv.,*
  946 F. Supp. 2d 432 (D. Md. 2013)
  aff'd, No. 13–1777, 2014 WL 2809027 (4th Cir. June 23, 2014)........................16

*Scott v. Harris,*
  550 U.S. 372, 127 S. Ct. 1769, 167 L.Ed.2d 686 (2007) ....................................10

*Sibley v. Lutheran Hosp. of Maryland, Inc.,*
  871 F.2d 479 (4th Cir. 1989) .............................................................................10

*Texas Dep't of Cmt.y Affairs v. Burdine,*
  450 U.S. 248, 101 S. Ct. 1089 (1981)..................................................................16

*Trusty v. Maryland,*
  28 F. App'x 327 (4th Cir. 2002) ..........................................................................15

*Turner v. United States,*
  736 F.3d 274 (4th Cir. 2013) ...............................................................................9

*U.S. Postal Serv. Bd. of Governors v. Aikens,*
  460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)........................................28

*Wallace v. Maryland,*
  CIV. CCB-14-276, 2014 WL 2175275 (D. Md. May 23, 2014).........................12

*Warch v. Ohio Cas. Ins. Co.,*
  435 F.3d 510 (4th Cir. 2006) ...............................................................................27

*Watson v. HSU Dev., Inc.,*
  No. GJH-13-2071, 2015 WL 3545623 (D. Md. June 5, 2015)............... 15, 16, 28

*Williams v. Carolina Healthcare Sys., Inc.,*
  452 F. App'x 392 (4th Cir. 2011).................................................................. 20, 21

**Statutes**

28 U.S.C. § 1291 ....................................................................................................1

28 U.S.C. § 1331 ....................................................................................................1

42 U.S.C. § 1981 ................................................................... 1, 2, 12, 13, 15

42 U.S.C. § 2000e ..............................................................................................1, 12

**Rules**

Fed. R. Civ. P. 56(a)..............................................................................................9

Fed. R. Civ. P.  56(c)..........................................................................................9, 10

Fed. R. Civ. P. 56(e)............................................................................................22

## INTRODUCTION

This case involves the application of settled legal standards to Appellant Mary Woolford Gibbs' ("Ms. Gibbs") discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000*e* ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). The United States District Court for the District of Maryland (the "District Court") properly entered summary judgment in favor of Appellee Board of Education of Dorchester County (the "Board") on these claims, and Ms. Gibbs has offered no persuasive grounds for reversal.

## STATEMENT OF JURISDICTION

The District Court had jurisdiction over the case pursuant to 28 U.S.C. § 1331 and entered a final judgment in favor of the Board on January 6, 2017 (JA 376-393). Ms. Gibb filed a timely notice of appeal on January 11, 2017 (JA 394). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

1.     Did the District Court properly find that Ms. Gibbs failed to establish a *prima facie* case of race discrimination under Title VII and Section 1981?

2.     Did the District Court properly find that Ms. Gibbs failed to demonstrate that the Board's proffered legitimate non-discriminatory reason for setting her salary was false and, instead, a pretext for intentional race discrimination?

1

## I.    STATEMENT OF THE CASE

Ms. Gibbs, an African-American female, is a former non-certificated employee of the Board who was assigned to its Finance Office from June 4, 2012 until October 31, 2014 (the "Relevant Period") (JA 40). She was initially hired as an Accounts Payable Clerk and later served as Payroll Specialist until she resigned from employment with the Board, effective October 31, 2014 (JA 40, 47, 73).

Ms. Gibbs initiated action against the Board on February 11, 2016 (JA 9-17). In her Complaint, Ms. Gibbs alleged that the Board engaged in unlawful employment practices in violation of her rights under Title VII and Section 1981 by compensating her at a lower rate than her white predecessors and successors in the positions she held during her tenure with the Board (JA 16-17).

Following discovery, the Board moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 (the "Motion"), arguing that based on the undisputed facts and the record developed in the case: (1) Ms. Gibbs failed to establish each of the essential elements of her discriminatory compensation claims; (2) the Board proffered legitimate, nondiscriminatory reasons for the rate at which it compensated Ms. Gibbs; and (3) Ms. Gibbs failed to establish that the Board's proffered reasons were pretext for intentional race discrimination (JA 32-34). Ms. Gibbs opposed summary judgment, and the Board replied (JA 3, 79-80).

The District Court held a hearing on the Motion on December 16, 2016 (JA 331-375). On January 6, 2017, the District Court issued a Memorandum Opinion and Order in which it granted the Motion and held that: 1) Ms. Gibbs failed to establish a *prima facie* case of race discrimination; and, 2) even assuming, *arguendo*, she did, the Board nevertheless was entitled to summary judgment because Ms. Gibbs failed sufficiently demonstrate that the Board's proffered explanation for setting her salary was false and, instead, was a pretext for intentional race discrimination (JA 376-393).

Ms. Gibbs timely filed a Notice of Appeal on January 11, 2017 (JA 394). On appeal, Ms. Gibbs argues that the District Court erred in granting summary judgment because the Board's proffered explanation for paying her predecessors and successors more than her – i.e., that they had significantly more overall professional experience and directly related experience – was false and merely a pretext for intentional race discrimination. *See* Br. of Appellant, at 18-19. Ms. Gibbs further argues that the District Court invaded the fact-finding province of the jury by concluding that she was not similarly situated to her predecessors and successors in the Accounts Payable and Payroll Specialist positions since that issue was "debatable" and "necessarily subjective" (JA 19).

As discussed more fully below, the District Court properly found that Ms. Gibbs failed to establish a *prima facie* case of intentional race discrimination since

she failed to come forward with evidence demonstrating that her prior work experience and qualifications were comparable to her predecessors and successors in either position at issue. Furthermore, even if Ms. Gibbs could establish a *prima facie* case of discrimination, the District Court correctly concluded that Ms. Gibbs offered insufficient evidence to establish that the Board's proffered explanation for paying her a lower salary than her predecessors and successors was false and merely a pretext for intentional race discrimination. Accordingly, the District Court's grant of summary judgment in favor of the Board should be affirmed.

## II.    STATEMENT OF THE FACTS

In April 2012, the Board issued an Announcement of Vacancy regarding an Accounts Payable Specialist or Accounts Payable Clerk, 12-Month Central Office Position, the salary portion of which provided as follows:

> Commensurate with qualifications, experience, and determination of salary scale placement. Based on the current salary scale for either:
>
> Accounts Payable Specialists – Administrative Secretary/Financial Specialist 12 month. Range is currently $30,183 – 50,095. Or Accounts Payable Clerk – Office Clerk/Secretary $19,532 - $32,417.

(JA 43, 53-54).

The Announcement of Vacancy also listed a number of qualifications for the position, which included, among other things:

● Graduation from a standard high school or possession of a State high school equivalence certificate.  A.A. degree desirable in the fields of either finance, accounting, business or related fields.
● Two years of experience in finance, accounting, or procurement;

* * *

● Finance, accounting and/or bookkeeping experience to include a basic understanding of bank account reconciliation, budgeting and expense coding;
● Proficient technology skills to include Microsoft Word, Excel, and Outlook;
● Experience with accounts receivable, and or accounts payable; and
● Some experience w/ automated finance systems/or other databases.

(JA 53-54).

On April 26, 2012, Ms. Gibbs applied for the Accounts Payable position (JA 43, 55-61).  At the time she applied, Ms. Gibbs did not hold a degree in accounting or otherwise nor did she indicate in her application materials that she had any professional experience in finance, accounting, procurement, or accounts payable and/or accounts receivable (JA 55-61).

Although Ms. Gibbs did not meet all of the qualifications for the position, the Board notified Ms. Gibbs of her appointment to the position of Accounts Payable Clerk and assigned her to the Finance Department in its Central Office, effective June 4, 2012 (JA 44, 62).  She commenced employment with a starting salary of $25,717 based on Step 9 of the 2011-12 Office Clerk-Secretary – 12 month Salary Scale for Dorchester County Public Schools.  *Id.*  Ms. Gibbs acknowledged receipt of her Letter of Appointment, accepted the position, salary, and benefits described therein, and began her new position on June 4, 2012.  *See id*.

5

According to Mr. Charles Dwayne Abt, who, at the time served as the Board's Human Resources Administrator and currently serves as the Assistant Superintendent of Administration, Ms. Gibbs' salary was calculated pursuant to the Department of Human Resources' Salary Offer Guidelines (the "Guidelines") (JA 44-45, 64-65). In accordance with those Guidelines, the Board determines the salary of newly hired non-certificated employees on a case-by-case basis depending on the following factors relating to the employee, including:

> (a) their Total Experience, which is generally defined as the total number of years of experience in the workforce;
> (b) their Relevant Related Experience, which is generally defined as the amount of experience a new hire has in the relevant field of work;
> (c) their Training, whereas a new hire with training, credentialing, education, or licensure which exceeds the minimum requirements of the position and which are an asset to DCPS will be placed on a higher salary scale, subject to salary parameters identified in the Vacancy Announcement;
> (d) Comparability/Equity, whereby a new hire's starting salary is compared with the salaries of existing employees in the relevant department; and
> (e) Budget, whereby consideration is given to the budget for the position and for the relevant department.

(JA 44, 64-65). Ms. Gibbs' starting salary was determined according to the Guidelines, applying these factors in reference to the Vacancy Announcement and commensurate with her qualifications and experience (JA 44-45, 53-54, 63). Moreover, the terms of employment for Board employees, including Ms. Gibbs, are

governed by the Negotiated Agreement between the Board and the requisite bargaining unit (JA 47).

In the eight months following her appointment to the Accounts Payable position with the Board, Ms. Gibbs received the following salary increases:

- On July 1, 2012, the start of the new fiscal year, Ms. Gibbs moved from Step 9 to Step 13 of the 12 Month Office Clerk/Secretary salary scale and received an increase in salary, bringing her annual salary to $26,617 (JA 45).
- In January 2013, the Board reclassified Ms. Gibbs' position, moving her from Step 13 of the 12-Month Office Clerk/Secretary to Step 1 of the 12-Month Administrative Secretary/Financial Specialist pay scale of the Negotiated Agreement at a higher salary (JA 40-41, 45, 66).
- On or about February 8, 2013, the Board advised Ms. Gibbs in writing that, upon review of her credentials and request for an additional salary increase, its Advanced Training Salary Committee determined that she qualified for and would receive a two (2) step salary increase, raising her salary to $30,933 – *i.e.*, Step 3 of the Administrative Secretary pay scale (JA 46, 67).

In May 2013, the Board issued an Announcement of Vacancy regarding a Payroll Specialist position, Internal Posting, the salary of which was based on the 12-Month 2012-2013 Administrative Secretary Salary Scale ($30,733 - $51,345) (JA 46, 68-69). Ms. Gibbs, who at that point had served nearly one (1) year in the Accountants Payable Clerk position, applied for the Payroll Specialist position (JA 46). At the time of her application, Ms. Gibbs lacked payroll experience (JA 55-61). Nevertheless, the Board notified Ms. Gibbs of her appointment to the Payroll Specialist position, effective July 1, 2013, with no change in her then-current salary of $30,933 (JA 46, 70). Ms. Gibbs acknowledged the salary and benefits associated

with the Payroll Specialist position, accepted the position, and began in that role on July 1, 2013. *See id.*

In February 2014, Mr. Abt met with Ms. Gibbs to discuss her request for an additional raise. (JA 47, 71-72). Mr. Abt explained that her transfer from Accountants Payable Clerk to Payroll Specialist was a lateral move, that the terms of her employment, including her compensation, were governed by the Negotiated Agreement, and that she was not entitled to another raise. *Id.*

On July 1, 2014, the start of the new fiscal year, Ms. Gibbs, along with all other non-certificated Board employees, received a two-step salary increase, bringing her annual salary to $32,341 (JA 47).

On or about October 15, 2014, Ms. Gibbs resigned from employment with the Board, effective October 31, 2014 (JA 47, 73). At the time of her resignation, Ms. Gibbs' annual salary was $32,341 (JA 20). Before her departure, Ms. Gibbs completed an Exit Interview Survey as well as a Notice of Separation (JA 47-48, 74-77). Ms. Gibbs neither alleged in the Exit Interview Survey nor in the Notice of Separation that she was undercompensated because of any protected status (i.e., her race) (JA 47-48, 74-77, 299-309).

## III.    STANDARD OF REVIEW

This Court "review[s] a district court's decision granting summary judgment *de novo,* applying the same legal standards as the district court and viewing all facts

8

and reasonable inferences therefrom in the light most favorable to the nonmoving party[.]" *Turner v. United States*, 736 F.3d 274, 280 (4th Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Indeed, the court has an affirmative obligation to prevent factually unsupported claims from proceeding to trial. *See Felty v. Graves-Humphreys Co*., 818 F.2d 1126, 1128 (4th Cir. 1987) (emphasizing that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party[, and further providing that] unsupported speculation is not sufficient to defeat a summary judgment motion") (internal citations omitted).

"Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that

the claims and defenses have no factual basis." *Sibley v. Lutheran Hosp. of Maryland, Inc.*, 871 F.2d 479, 483 n.9 (4th Cir. 1989). Moreover, and of significant application to the instant case, the Supreme Court has explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, **"[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"** *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). **"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). **When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment**.

*Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L.Ed.2d 686 (2007)

(emphasis in bold added).

## IV.    SUMMARY OF THE ARGUMENT

The District Court correctly found that Ms. Gibbs failed to establish a *prima facie* case of race discrimination because the record patently shows that Ms. Gibbs' was not similarly situated to her predecessors and successors in the Accounts Payable and Payroll Specialist positions. Furthermore, the District Court correctly

found that Ms. Gibbs failed to demonstrate that the Board's proffered explanation for paying her less than her white predecessors and successors in the positions at issue was merely a pretext for intentional race discrimination.

In her Opening Brief, as with her arguments before the District Court, Ms. Gibbs points to no material facts in the record to substantiate her bald assertion that her prior experience working as a teller and "head teller" at the Bank of the Eastern Shore was somehow related to the positions she held with the Board or that her experience and qualifications were comparable to her white counterparts. Ms. Gibbs further contends that alleged discrepancies in the Board's paperwork, the opinion testimony of a co-worker, and statistical disparities in the Board's hiring of African American employees in the its Finance Office somehow demonstrates that the Board's proffered explanation for paying her less that her proposed comparators was mere pretext for intentional discrimination. Such claims are wholly unsupported by the record.

Before the District Court, Ms. Gibbs failed to meet her ultimate burden of showing that the Board's decision to compensate her at a rate less than her white counterparts was the result of intentional race discrimination. Nothing in her Opening Brief overcomes the District Court's conclusions. Thus, in the absence of any evidence sufficient to generate a dispute of material fact as to whether the Board's legitimate non-discriminatory reason was a pretext for discrimination, there

11

is nothing in the record from which a jury could reasonably find in Ms. Gibbs' favor. In the absence of any triable issues for the fact-finder in this case, the District Court properly granted summary judgment in favor of the Board and its ruling should therefore be affirmed.

## V.    ARGUMENT

Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a); *Wallace v. Maryland*, CIV. CCB-14-276, 2014 WL 2175275, *3 (D. Md. May 23, 2014). Additionally, Section 1981(a), which can serve as the basis for employment discrimination claims, states in relevant part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens.....'" 42 U.S.C. § 1981(a); *see also Morrow v. Farrell*, 187 F. Supp. 2d 548, 553-54 (D. Md. 2002) *aff'd*, 50 F. App'x 179 (4th Cir. 2002). "The elements for claims of workplace discrimination are the same under both § 1981 and Title VII." *Mandengue v. ADT Sec. Sys., Inc.*, CIV.A. RDB-09-3103, 2010 WL 2365463, *4 (D. Md. June 4, 2010); *see James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 375 n. 1 (4th Cir. 2004);

12

*see also Hawkins v. Leggett*, 955 F. Supp. 2d 474, 495 (D. Md. 2013); *see also Love–Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004).

"Absent direct evidence, the elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *see also Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 959–60 (4th Cir. 1996); *Cepada v. Bd. of Educ. of Baltimore Cnty*., 814 F. Supp. 2d 500, 510 (D. Md. 2011) (applying the same elements to a disparate treatment claim under Section 1981).

The record developed in this case fails to demonstrate that the Board or any of its employees made comments or took any actions which would rise to the level of direct evidence of race discrimination. *See Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 607 (4th Cir. 1999) (defining direct evidence as "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision"). Consequently, Ms. Gibbs' claims must be evaluated under the *McDonnell Douglas* burden-shifting analysis as articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Brinkley*, 180 F.3d at 607. To this end, Ms. Gibbs must first establish a *prima facie* case of intentional race discrimination. *See id*.; *see also Coleman*, *supra*.

If Ms. Gibbs can establish a *prima facie* case, the burden shifts to the Board to articulate a non-discriminatory justification for its adverse employment action. *See Brinkley*, 180 F.3d at 607. Thereafter, the burden shifts back to Ms. Gibbs to demonstrate that the asserted justification is pretextual. *See id*. (further explaining that, "[i]f the employer meets its burden of production [of articulating a non-discriminatory justification for its actions], the presumption of discrimination raised by the *prima facie* case is rebutted and 'drops from the case,' and the [complainant] bears the ultimate burden of proving that she has been the victim of discrimination"). At this point, Ms. Gibbs bears the ultimate burden of proving that the Board intentionally discriminated against her on the basis of her race. *See Morgan v. City of Rockville*, No. GJH-13-1394, 2015 WL 996630, at *4 (D. Md. Mar. 4, 2015); *see also Ousley v. McDonald*, 648 F. App'x 346, 349 (4th Cir. 2016) ("In order to succeed at this stage, the plaintiff must "show both that the reason advanced was a sham *and* that the true reason was an impermissible one under the law.") (citing *Russell v. Microdyne Corp.,* 65 F.3d 1229, 1235 (4th Cir. 1995)). Ms. Gibbs has utterly failed to meet her burden in this case, warranting an affirmance of the District Court's grant summary judgment in favor of the Board.

It is undisputed that Ms. Gibbs is a member of a protected class and that she had satisfactory performance. However, as the District Court properly found, Ms. Gibbs failed to establish a *prima facie* claim of race discrimination since the record

14

plainly demonstrates that she was not treated differently than similarly situated employees outside of her protected class. Even assuming, *arguendo*, she could, in fact, establish a *prima facie* claim of race discrimination, the District Court properly found that the Board proffered legitimate, nondiscriminatory reasons for compensating Ms. Gibbs as it did, and she could point to no evidence to support her claim that the Board's reasons were pretextual.

### A.   THE DISTRICT COURT PROPERLY FOUND THAT MS. GIBBS FAILED TO ESTABLISH A *PRIMA FACIE* CASE OF RACE DISCRIMINATION.

To establish a *prima facie* case of discrimination in compensation under Title VII and Section 1981, Ms. Gibbs must show that: "(1) she is a member of a protected class; (2) she is as qualified as employees not of the protected class; and (3) she was paid less than other comparably qualified employees." *Trusty v. Maryland*, 28 F. App'x 327, 329 (4th Cir. 2002); *see also Morgan*, 2015 WL 996630, at *6 (same).

Ms. Gibbs bases her *prima facie* case solely upon her comparison to six (6) white predecessors and successors in the positions of Accounts Payable and Payroll Specialist, to whom she claims she was "similarly situated." "The appropriate factors to consider in a discriminatory compensation claim include whether the Plaintiff and those who she claims are similarly situated had the same or substantially similar experience, education, duties, and qualifications." *Watson v. HSU Dev., Inc.*, No. GJH-13-2071, 2015 WL 3545623, at *3 (D. Md. June 5, 2015)

15

(citing *Romeo v. APS Healthcare Bethesda, Inc.,* 876 F.Supp.2d 577, 592 (D. Md. 2012)).

Where, as here Ms. Gibbs based her allegations completely upon a comparison of herself to employees outside of her protected classification, "the validity of [Ms. Gibbs'] *prima facie* case depends upon whether that comparator is indeed similarly situated." *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (citing *Texas Dep't of Cmt.y Affairs v. Burdine,* 450 U.S. 248, 258, 101 S. Ct. 1089 (1981)); *see also Watson*, 2015 WL 3545623, at *3 ("When a plaintiff bases the discrimination entirely upon a comparison to employees from outside her protected class . . . she 'must demonstrate that the comparator was 'similarly situated' in *all relevant respects*.'") (emphasis added) (citing *Sawyers v. United Parcel Serv.,* 946 F. Supp. 2d 432, 442 (D. Md. 2013) *aff'd,* No. 13–1777, 2014 WL 2809027 (4th Cir. June 23, 2014)) (citations omitted). Thus, Ms. Gibbs is "required to show that [she is] similar in *all relevant respects* to [her proposed] comparator[s]." *Haywood*, 387 F. App'x at 359 (emphasis added). "The standard for whether employees are similarly situated requires that their circumstances be *nearly identical*." *Hunter v. Wake Cty. Bd. of Educ.*, No. 5:08-CV-62-D, 2010 WL 2164613, at *5 (E.D.N.C. May 25, 2010) (emphasis added); *see also Lightner v. City of Wilmington,* 545 F.3d 260, 265 (4th Cir. 2008) ("The similarity between comparators . . . must be clearly established in order to be meaningful."). The undisputed facts before the District

Court revealed that Ms. Gibbs had significantly less overall professional experience and directly related experience when compared to her predecessors and successors in the positions she held.

The District Court utilized the following two charts to compare Ms. Gibbs and her predecessors and successors in the Accounts Payable and Payroll Specialist positions in the areas of salary, experience, and qualifications:

## ACCOUNTS PAYABLE CLERK/SPECIALIST

| Employee | Education | Experience | Starting Date | Starting Salary | Last Work Day | Final Salary |
|---|---|---|---|---|---|---|
| Tammy McCarter (white) | B.S. Business Admin. | 14 years of experience in areas of finance and accounts payable, accounts receivable, cost accounting, and profit and loss statement preparation. | 08/31/04 | $36,000 | 07/01/16 | $37,454 |
| Patricia Webster (white) | High School Degree | Employed by the Board since 1979. Prior to her employment with the Board, she had 8 years of experience in book keeping and as an office manager. She had 27 years of experience in the Finance Office when she was appoints to Accounts Payable Specialist. | 08/2006 | $39,233 | 07/30/12 | $44,306 |
| Mary Gibbs (black) | High School Degree & 6 months from Assoc. Degree in accounting | 13 years as a bank teller with 10 as "head teller" responsible for the management of other tellers. No experience in Accounts Payable or Payroll | 07/01/12 | $26,717 | 07/01/13 | $30,933 |
| Karen Robinson (white) | High School Degree | Initially hired as an Accounts Payable Associate. She had 18 years' experience as customer service representative at a local bank, and 7 years as an accounts clerk to the City of Cambridge | 07/01/13 | $29,011 | Still employed | Current Salary Not Known |

17

**PAYROLL SPECIALIST**

| Employee | Education | Experience | Starting Date | Starting Salary | Last Work Day | Final Salary |
|---|---|---|---|---|---|---|
| Elizabeth Fiorenza (white) | High School Degree | 10 years as Accounting Clerk and 3 years payroll | 11/16/04 | $33,500 | 08/31/10 | $40,935 |
| Beth Wilson (white) | High School Degree and had 53 credits earned towards a degree in business administration. | 12 years finance experience as a manager at a bank, nearly 7 years in HR, and 3 years payroll experience | 09/16/10 | $42,589 | 07/01/13 | $45,459 |
| Mary Gibbs (black) | High School Degree & Associates Degree in accounting | 13 years as a bank teller with 10 as "head teller" responsible for the management of other tellers.  1 year (by then) as Accounts Payable Clerk.  No experience in Payroll. | 07/01/13 | $30,933 | 10/2014 | $32,341 |
| Lori Gray (white) | High School Degree | 10 years in office management, 3 years payroll, and 4 years as accounting clerk | 12/08/17 | $38,511 | | As of 2015-2016 $40,428 |

Based upon the undisputed facts in the record, the District Court aptly compared the instant case to *Romeo*, *supra* where the same court, four (4) years earlier, granted summary judgment on the plaintiff's disparate compensation claim since the plaintiff, an African-American woman had "about half as many years of experience as [the white male employee] and lacked [the white male employee's] master's degree." *Romeo*, 876 F. Supp. 2d at 592.  The District Court found here, as in *Romeo*, that "there are significant differences between [Appellant] and the six individuals against whom she compares herself" (JA 387).

The District Court specifically recognized that in her nearly thirteen (13) years of experience as a bank teller and "Head Teller" at the Bank of the Eastern Shore, Ms. Gibbs was responsible for teller training and supervision, reconcilement of

18

general ledger accounts, and data entry (JA 387).  However, the District Court also noted that during her deposition, Ms. Gibbs "was unable to articulate with any specificity how such experience was a surrogate for direct experience in accounts payable or payroll . . . [and she] presented no additional evidence, expert or otherwise, suggesting that her bank teller experience was comparable." *Id.*

Accordingly, the District Court properly found that each of the predecessors and successors with whom Ms. Gibbs claims comparability "had greater relevant-work experience, levels of education, qualifications, or some combination thereof" (JA 387).  The District Court rejected Ms. Gibbs' argument that the differences in experience between her and her white counterparts do not equate to the salary differential because her argument was "not self-evident, and . . . [Ms. Gibbs] has presented no evidence to suggest that her experience was comparable or that the differences noted were, in fact, 'small.'"  (JA 388).  The District Court further reasoned that "[w]hile there may be instances where, without such evidence, the Court could reasonably conclude that differences in education, training, or experience for a given job were 'small,' *this is not one of them*."  *Id.* (emphasis added).

In the absence of any evidence whatsoever, Ms. Gibbs entreats this Court to fill a vast gap in the record with an unsupported inference that her bank-teller experience was comparable to the directly related experience of her predecessors

and successors in the positions at issue, arguing that a "jury could reasonably find that none of Mrs. Gibbs' comparators had superior qualifications[.]" Br. of Appellant, at 25. Tellingly, Ms. Gibbs offers no evidence – expert or otherwise – that would enable a jury to reasonably find in her favor in this regard.

Ms. Gibbs criticizes the District Court for concluding that she "had less experience than each of her comparators because she failed to articulate with any specificity how her experience as a bank teller was comparable to accounts payable or payroll," regarding such determination as "tenuous and irreconcilable with the record." Br. of Appellant, at 22-23. The Board respectfully submits that the conclusion reached by the District Court is supported by the record.

The record clearly reveals that in comparison with Ms. Gibbs, her predecessors and successors had far more professional experience – i.e., overall years of experience and experience directly related to positions at issue. None of Ms. Gibbs' proposed comparators had less than thirteen (13) years of overall experience (the number of years Ms. Gibbs had at the time of her initial hiring), and all but one had at least three (3) years of experience directly related to each position.[1]

---

[1] At the time of her appointment to the position of Accounts Payable Specialist, Patricia Webster had 27 years of experience in the Board's finance office and 8 years of experience prior to that in book keeping and as an office manager. Ms. Webster's longevity with the Board alone distinguishes her from Gibbs. Therefore, Gibbs and Ms. Webster are not "similarly situated" so as to satisfy Gibbs' *prima facie* case of discrimination. *See Williams v. Carolinas Healthcare Sys.*, No. 3:10-CV-232-GCM, 2011 WL 1131087, at *3 (W.D.N.C. Mar. 25, 2011) (holding that plaintiff was not

Ms. Gibbs had none. Thus, it is undisputed that Ms. Gibbs' predecessors and successors had more overall and directly related professional experience than she possessed at the time she applied for either of the two positions.

Despite numerous invitations by the District Court, Ms. Gibbs repeatedly failed to point to any evidence in the record to substantiate her bald allegation that her prior experience as a bank teller was comparable or that the differences between her experience and that of her proposed comparators were "small." To bolster her argument, Ms. Gibbs points to the testimony of Board Comptroller Timothy Brooke. However, the record reveals that Mr. Brooke simply agreed with the characterization of Plaintiff's counsel that Ms. Gibbs had a suitable background, education, and experience to hold the particular position in question. *See id.*; *see also* JA 191. Ms. Gibbs' characterization of the Board's assessment of her prior work experience is wholly unsupported by the record.

First, Mr. Brooke specifically testified that he played no part in setting Ms. Gibbs' salary (JA 191). Rather, that was done by Human Resources, i.e., Mr. Abt. *See id.* Second, as to the Salary Worksheet, Mr. Abt, who was charged with setting Ms. Gibbs' salary in accordance with the Board's Salary Offer Guidelines,

---

similarly situated to white employees in her group because the white employees "had a longer tenure of employment with the Defendant than did Plaintiff"), *aff'd sub nom. Williams v. Carolina Healthcare Sys., Inc.*, 452 F. App'x 392 (4th Cir. 2011).

explained, unequivocally, "that [Ms. Gibbs'] professional experience at The Bank of the Eastern Shore was *unrelated* to the position of Accounts Payable Clerk for which she was hired . . . however, [she] was credited for twelve years' work experience, minus three years since the salaries of non-certificated Board employees had been frozen for three years preceding her employ due to budgetary issues" (JA 45) (emphasis added).

Since the record was devoid of sufficient evidence to generate a genuine dispute of material fact concerning Ms. Gibbs' relative qualifications and experience in comparison with those of her predecessors and successors, the District Court correctly found no triable issue for a jury on this point. *See Anderson*, 477 U.S. at 250 (stating that "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'") (quoting Fed. R. Civ. P. 56(e)); *see also Felty*, 818 F.2d at 1128 (emphasizing that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party [and further providing that] unsupported speculation is not sufficient to defeat a summary judgment motion") (internal citations omitted). For these reasons, the District Court properly granted summary judgment in favor of the Board.

**B.    THE DISTRICT COURT PROPERLY FOUND THAT MS. GIBBS FAILED TO DEMONSTRATE PRETEXT ON THE PART OF THE BOARD.**

The District Court properly found that Ms. Gibbs failed to present sufficient evidence to show that the Board's proffered reasons for any pay disparity was false and, in fact, a pretext for intentional race discrimination. Accordingly, this Court should affirm the District Court's grant of summary judgment on this additional basis.

On appeal, Ms. Gibbs attacks the Board's proffered legitimate non-discriminatory reason for paying Ms. Gibbs less than her white-counterparts on several fronts. Her arguments are unavailing.

Ms. Gibbs relies heavily upon the deposition testimony of Laurie Dale, a former co-worker and the Assistant Comptroller for the Board. Specifically, Ms. Gibbs claims that "[a]ccording to Ms. Dale . . . the only reason the Board did not pay Mrs. Gibbs more money was because she is African American." Br. of Appellant, at 15. Yet, Ms. Gibbs acknowledges, as she must, that Ms. Dale lacked authority or input of any kind in setting employee salaries (SJA 1-2). Nevertheless, Ms. Gibbs baldly asserts that Ms. Dale's testimony is probative since she "worked in the Finance Department for more than a decade and is aware of the comparators' personnel files and knows about their credentials from either interviewing or talking to them in the course of her employment" (SJA 28). The record reveals that Ms.

Dale's opinion testimony is wholly insufficient to create a genuine dispute of material fact, as the District Court correctly concluded.

As the District Court pointed out, "there is nothing in the record that shows how Ms. Dale arrived at that conclusion" (JA 383). The District Court further recognized that "Ms. Dale, who was not [Ms. Gibbs'] supervisor, noted that she was unfamiliar with the process of assigning salaries to positions and that she did not have any authority over salary determinations . . . Accordingly, without a specific factual foundation, such an unsupported opinion is not sufficient to constitute a genuine dispute of material fact" (JA 383; *see also* SJA 1-2).

During her deposition, Ms. Dale regarded Ms. Gibbs as "just a frustrated co-worker" in describing her conversation with Ms. Gibbs about the pay disparity (SJA 3). Indeed, Ms. Dale conceded that the conclusion she drew that the pay disparity was based on Plaintiff's race amounted to nothing more than "an *opinion*, *my opinion*, *not fact*[.]" *Id*. (emphasis added). Ms. Dale likewise conceded that she never saw records of other employees' qualifications or backgrounds (JA 183). Consequently, Ms. Dale's speculative testimony concerning the basis for a disparity in pay is immaterial, lacks specific factual foundation, and is wholly insufficient to create a genuine dispute of material fact in this case. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (stating that "[i]t is the perception of the decision maker which is relevant," and that "[t]he alleged opinions of [plaintiff's] co-workers

24

. . . are . . . close to irrelevant") (internal citations and quotation marks omitted); *see also Alexander v. Carolina Fire Control Inc.*, 112 F. Supp. 3d 340, 352 (M.D.N.C. 2015) (stating that "Plaintiff's own self-assessment or any coworker's opinions would be irrelevant").

Ms. Gibbs also asserts that a handful of alleged discrepancies regarding the Board's Salary Offer Guidelines and Employee Salary Worksheet somehow provides sufficient evidence that the Board's proffered reason for paying her less than her white counterparts was a pretext for discrimination. *See* Br. of Appellant, at 28. These arguments are nothing more than red-herrings. Indeed, the District Court opined that although it "cannot discern a precise pattern of how each factor was weighted in every case or whether the various factors were always weighted with perfect consistency . . . a lack of mathematical precision in the application of these Guidelines does not render them a pretext" (JA 391).

Even if the Guidelines and Salary Worksheet were improperly calculated or were misapplied, Ms. Gibbs' argument that the Board did not uniformly apply the Guidelines is inadequate proof of unlawful discrimination. *See Hawkins,* 203 F.3d at 279 ("[W]hen an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.") (internal quotation marks omitted); *Kess v. Mun. Employees*

*Credit Union of Baltimore, Inc.*, 319 F. Supp. 2d 637, 645–46 (D. Md. 2004) (same); *Dugan v. Albemarle County School Bd.,* 293 F.3d 716, 722-23 (4th Cir.2002) (stating that even if there is evidence that the employer "erroneously or even purposely misapplied" a reduction-in-force policy, "it is not proof of unlawful discrimination"). Indeed, while Ms. Gibbs argues to the contrary, it is well settled that the Court does not act "as a super-personnel department weighing the prudence of employment decisions" made by employers. *Anderson v. Westinghouse Savannah River Co.,* 406 F.3d 248, 272 (4th Cir. 2005).

Neither before the District Court nor in her Opening Brief does Ms. Gibbs point to anything in the record which supports her naked assertion that her prior work experience was related to the two positions she held with the Board. Thus, the District Court properly found that the Ms. Gibbs failed to demonstrate that her bank teller experience was comparable to the Accounts Payable or Payroll Specialist positions at issue (JA 12).

Additionally, Ms. Gibbs' arguments that her satisfactory performance compared to Ms. Gray's unsatisfactory performance somehow suffices as further evidence that she possessed relevant experience for the position at the time of hire should be rejected. Since this is a case concerning the employees' initial qualifications and compensation at the time of hire, the District Court rightly compared the experience, education, and qualifications of Ms. Gibbs and her

26

predecessors and successors, not their subsequent performance. *See Romeo,* 876 F. Supp. 2d at 592 ("The appropriate factors to consider in a discriminatory compensation claim include whether the Plaintiff and those who she claims are similarly situated had the same or substantially similar experience, education, duties, and qualifications."); *see also Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 514 (4th Cir. 2006) ("Where an employer hires a new employee, the focus typically is on the qualifications of the candidates.").

To meet her burden at the pretext stage, Ms. Gibbs must "show both that the reason advanced was a sham *and* that the true reason was an impermissible one under the law." *Ousley*, 648 F. App'x at 349 (citing *Russell,* 65 F.3d at 1235); *see also Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097, 2106, 147 L. Ed. 2d 105 (2000) ("The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct' . . . In other words, '[i]t is not enough ... to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'") (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519-24, 113 S. Ct. 2742, (1993)). The Fourth Circuit has been "mindful of the Supreme Court's instruction that the 'ultimate question' in any discrimination case is the existence of 'discrimination *vel non.*'" *Laing v. Fed. Exp. Corp.*, 703 F.3d

27

713, 722 (4th Cir. 2013) (citing *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)).

Here, the District Court correctly concluded that Ms. Gibbs did "not point to any evidence suggesting that the reason proffered by [the Board] is not true" (JA 390). Given Ms. Gibbs' failure to refute the Board's proffered reason for paying her less than her predecessors and successors, the District Court appropriately granted summary judgment in favor of the Board. *See Anderson*, 406 F.3d at 273 (finding that plaintiff failed to demonstrate pretext where "the defendant has stated a reason why [plaintiff] did not receive a promotion, and [plaintiff] has been unable to controvert it"). Ms. Gibbs' arguments in her Opening Brief fail to overcome the District Court's conclusions.

Finally, Ms. Gibbs asserts an irrelevant statistical argument, contending that "there is no White employee who was paid less for doing the same job as Ms. Gibbs[, that she] was the first African American to work in the Finance Department[,] and [that she] was one of just a few African American[s] employed by the Board in its Division of Administrative Services." Br. of Appellant, at 27. On these bases, Ms. Gibbs attempts to distinguish her case from *Watson*, 2015 WL 3545623, at *4, where there were three male laborers who were hired at the same wage rate as the female plaintiff, and, once the plaintiff received a wage increase, there were seven male laborers within her classification who earned less than her.

The District Court properly rejected Ms. Gibbs' statistical arguments. It is well settled that evidence of a mere statistical disparity cannot prove that a particular employment decision was motivated by unlawful discrimination. *See, e.g.*, *Hawkins*, 955 F. Supp. 2d at 492–93 (stating that "a mere statistical disparity is generally insufficient to prove disparate treatment."); *Bostron v. Apfel*, 104 F. Supp. 2d 548, 554–55 (D. Md. 2000), *aff'd*, 2 F. App'x 235 (4th Cir. 2001) ("Decisions of this Court and of the Fourth Circuit indicate that statistical evidence has little, if any, relevance in an individual disparate treatment action. Statistics alone are not sufficient to prove pretext in individual disparate treatment cases.") (Internal citations omitted).

## VI.    CONCLUSION

For the foregoing reasons, the Appellee Board of Education of Dorchester

County respectfully requests that this Court affirm the judgment of the United States

District Court for the District of Maryland and, thereby, dismiss the instant appeal.

## <u>ORAL ARGUMENT REQUESTED</u>

Pursuant to FRAP 34(a)(1) and Local Rule 34(a), the Board respectfully requests
oral argument.

Respectfully submitted,

/s/ Lisa Y. Settles
Lisa Y. Settles
Federal Bar No. 25838
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland   21204
lsettles@pklaw.com
Tele: (410) 339-5783
Fax: (410) 832-5631

/s/ Adam E. Konstas
Adam E. Konstas
Federal Bar No.18957
PESSIN KATZ LAW, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland   21204
Tele: (410) 339-5786
Fax: (410) 832-5668
akonstas@pklaw.com

*Counsel for Appellee*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**
**Effective 12/01/2016**

**No.** 17-1045      **Caption:** Mary Woolford Gibbs v Dorchester County Bd. of Ed.

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔] this brief or other document contains _____7,142_____ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✔] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
Times New Roman 14 font _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) Lisa Y. Settles, Esq.

Party Name Dorchester County Board of Education

Dated: April 24, 2017

# United States Court of Appeals
## for the Fourth Circuit

*Mary Woolford Gibbs v. Dorchester County Board of Education*, No. 17-1045

## CERTIFICATE OF SERVICE

I, Elissa Matias, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by PESSIN KATZ LAW, P.A., Attorneys for Appellee to print this document. I am an employee of Counsel Press.

On **April 24, 2017**, Counsel for Appellants has authorized me to electronically file the foregoing **Brief for Appellee** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> ASHLEY A. BOSCHE, ESQ.
> ROBIN R. COCKEY, ESQ.
> COCKEY, BRENNAN & MALONEY, PC
> 313 Lemmon Hill Lane
> Salisbury, MD 21801
> bosche@cbmlawfirm.com
> rrcesq@cbmlawfirm.com
> (410) 546-1750
> *Counsel for Appellant*

Additional a paper copy will be mailed to the above counsel on this date.

Unless otherwise noted, the required paper copies have been filed with the Court on the same date via U.S. Express Mail.

April 24, 2017

/s/ Elissa Matias
Elissa Matias
Counsel Press